BUCHALTER NEMER
A Professional Corporation
STEVEN BROWER (CA BAR 93568)
**[Will comply with LR IA 10-2 Within 7 Days]**
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: (714) 549-5150
Facsimile: (949) 224-6410
Email:  sbrower@buchalter.com

Attorneys for Plaintiff National Contractors Insurance
Company, Inc., a Risk Retention Group

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA, SOUTHERN DIVISION

NATIONAL CONTRACTORS
INSURANCE COMPANY, INC., A RISK
RETENTION GROUP,

        Plaintiff,

    vs.

FRANK FALCO, BARBARA FALCO,
TERRA COTTA CONSTRUCTION
SERVICES, INC., REBECCA
GARDENERJORDAN, ANTHONY M.
GARDENER, JAMIE A. GARDENER,

        Defendants.

Case No. CV-10-730

COMPLAINT

      Plaintiff National Contractors Insurance Company, Inc., a Risk Retention Group ("NCIC"), by way of its Complaint against the defendants, hereby alleges as follows:

## JURISDICTION AND VENUE

      1.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and the defendants, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 6184401v1

1

2.      Venue is proper in the United States District Court for the District of Nevada pursuant to, inter alia, 28 U.S.C. §§ 1391 et seq., and particularly subsection (a)(2), because this is the district in which a substantial part of the events, acts or omissions giving rise to the within claims occurred.   Further, NCIC is informed and believes that each of the defendants resides within the district.

### THE PARTIES

3.      NCIC is, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of Montana, with its principal place of business in California.  NCIC is a risk retention group pursuant to 15 U.S.C. § 3902.

4.      NCIC is informed and believes that defendant Terra Cotta Construction Services, Inc. ("Terra Cotta") was a corporation organized and existing under the laws of the State of Nevada, with a principal place of business in Las Vegas, Nevada.   A Certificate of Dissolution was filed with the Nevada Secretary of State, thereby dissolving Terra Cotta, on our about April 20, 2009.

5.      NCIC is informed and believes that defendants Frank Falco and Barbara Falco are individuals who are citizens of the State of Nevada.  Said defendants will be referred to jointly as "the Falcos."

6.      NCIC is informed and believes that defendants Rebecca Gardenerjordan, Anthony M. Gardener and Jamie A. Gardener are individuals who are citizens of the State of Nevada.   Said defendants will be referred to jointly as "Alleged Terra Cotta Individuals."

### GENERAL ALLEGATIONS

7.      Effective February 13, 2006, NCIC issued a general liability insurance policy to Terra Cotta.  The policy provided specified coverage pursuant to the terms and conditions of the policy.

8.      On or about June 2, 2006, Terra Cotta entered into a contract with the Falcos to "rebuild [1125 Seno Court, Boulder City] to existing condition prior to the fire."  The

1  contract was later modified to include additional work. As such, the entire home and
2  garage were within the scope of work.

3        9.    A building permit was issued for "remodel & addition valued at $143,000"
4  effective June 27, 2006. The contractor was shown as Terra Cotta with Alexander
5  Gardner-Jordan as the contact person.

6        10.    NCIC is informed and believe that Alexander Gardnerjordan (who is not
7  named as a defendant herein) was the qualifying officer for the Nevada Contractors Board
8  on behalf of Terra Cotta. NCIC is further informed and believes that Alexander
9  Gardnerjordan is the primary contact between the Falcos and Terra Cotta for the purpose
10  of all communications, acts and/or omissions.

11        11.    On July 20, 2006, Alexander Gardnerjordan, on behalf of Terra Cotta, sent a
12  letter to the Falcos which stated, in part:

13          Please note that we will be completing your project with our direct
14          supervision over sub-contractors and skilled CLP personnel. I have
        enclosed another letter to explain workmans comp issues in regards to our
15          company structure.

16  Another letter of that same date, which was sent from Alexander Gardnerjordan, on behalf
17  of Terra Cotta, to the Falcos, stated in part:

18          "The purpose of this letter is to inform you as to the workers compensation
        information as it pertains to [Terra Cotta]. [Terra Cotta] is exempt from
19          having workers compensation insurance as we have certified with the State
        of Nevada that we do not have any employees working for TCCS. All
20          people directly involved with the company are in fact owners and officers of
        the company. <u>All work related to projects is either using a sub-contractor</u>
21          <u>with workers compensation insurance or from a personnel service that</u>
        <u>carries workers compensation for the personnel on the project (such as CLP,</u>
22          <u>Labor ready of Construction workers resources</u>.." [Emphasis added]

23        12.    The building permit file, maintained by the City of Boulder City, does not
24  reveal any unique problems with the course of construction. The Rough signoffs
25  (plumbing, mechanical, electrical) were in October and November of 2006. In or about
26  November, 2006 an engineer submitted a letter with suggested repairs which related
27  exclusively to work which had been performed by Terra Cotta. Dry wall was signed off
28  by January 11, 2007. Final trades were signed off in March, 2007. On March 21, 2007 a

Certificate of Completion was issued by the City of Boulder City, Division of Building Inspection.  The Certificate stated "at the time of issuance, this structure was in substantial compliance with the Fire, Safety, Structural, Zoning and related Codes of the City regulating building construction for use."

13.     NCIC is informed and believes that notwithstanding the foregoing, there were disputes between Terra Cotta and the Falcos before, during and after the issuance of the Certificate of Completion.   Such disputes included, but were not limited to: the completion of "punch list" items; payment for work performed; authorization for change orders; responsibility for correction of pre-existing plumbing problems; and other matters relating  to the contractual agreement between Terra Cotta and the Falcos.

14.     On November 30, 2007, the Falcos filed suit against Terra Cotta, and some of the sub-contractors in the Nevada Eighth Judicial District state court, Case No. 07A551598 ("Underlying Suit").

15.     That matter was tendered to NCIC for coverage on behalf of Terra Cotta and NCIC initially appointed counsel to defend Terra Cotta.

16.     By letter dated July 10, 2008, NCIC advised Terra Cotta that, after review of the information then available "there is no coverage available for this claim for Terra Cotta under the subject NCIC Insurance Policies."  The defense counsel for Terra Cotta, previously appointed by NCIC, filed a motion to withdraw, which was granted on August 14, 2008.

17.     Thereafter, the Falcos filed a First Amended Complaint which named, for the first time, the Alleged Terra Cotta Individuals as defendants.  Neither Terra Cotta, nor any of the Alleged Terra Cotta Individuals, tendered the First Amended Complaint to NCIC for a coverage determination.

18.     On February 9, 2009, the Falcos filed a Notice of Acceptance of an "Offer of Judgment" on behalf of Anthony M. Gardener and Jamie A. Gardener which NCIC is informed and believes was a judicially binding resolution of the Underlying Litigation as to those parties.

19.     On February 1, 2010, a default judgment was entered against Terra Cotta in the amount of $355,695.18.

20.     On or about April 28, 2010, counsel for the Falcos sent a letter to NCIC claiming that the "owners and principals" of Terra Cotta had assigned their rights against NCIC and demanded that NCIC agree to pay the sum of $355,695.18 on or before May 14, 2010.

21.     On May 6, 2010, substantially prior to the unilateral deadline of May 14, 2010, NCIC contacted counsel for the Falcos and requested access to non-privileged documents and information.  Counsel for NCIC offered to travel to Nevada to review those materials.  Counsel for the Falcos represented that the documents would be provided to NCIC, forthwith, without the necessity of traveling to Nevada.  However, as of the date of the filing of this Complaint, NCIC has not received any further documents from counsel for the Falcos, nor has NCIC received any other communication.

22.     However, notwithstanding a failure to provide the documents which were promised to NCIC, on May 11, 2010, the Falcos filed a motion to add NCIC as a "Doe" in the Underlying Litigation.   That motion has not been served on NCIC nor, in the ordinary course of events would such motion be served on NCIC until after the Court has issued an order.  No Order has been issued as of this date so that NCIC is not a party to any other proceeding, with any of the Defendants, as of the date of the filing of this Complaint.

23.     The motion filed with the state court includes a copy of the alleged Assignment of Rights.  Deficiencies which appear on the face of the document include, but are not limited to, the following:

A.     The document assigns rights against an entity known as "Nevada Contractors Insurance Company" which is defined therein as NCIC.  While the initials NCIC are the same, the plaintiff here has no relationship to Nevada Contractors Insurance Company.

B.      The document refers to the Alleged Terra Cotta Individuals as though they had ownership interest and/or control of Terra Cotta at the time the document was executed, without ever actually identifying any such capacity.

C.      Because Terra Cotta has been dissolved the only people who can act on behalf of Terra Cotta are the directors, and they act as trustees for the shareholders.   NCIC is informed and believes that the only shareholders are Alexander and Rebecca Gardenerjordan.   Therefore, the provision which provides for a refund to the Alleged Terra Cotta Individuals of their settlement payment is void and might constitute a breach of fiduciary duty to Alexander even if any of the Alleged Terra Cotta Individuals is a Director and otherwise had the legal authority to make an assignment of the assets of Terra Cotta.

24.     NCIC is informed and believes that certain other events may be relevant to these proceedings including, but not limited to, the following:

A.      The Falcos filed a complaint with the Nevada Contractors Board regarding Terra Cotta.   On or about July 6, 2007 the Board sent a letter which stated, in part: "After investigation, we are closing the complaint because we have determined that [Terra Cotta] did not violate the Nevada Contractors Licensing Law."

B.      In or about 2007 Alexander Gardenerjordan purchased from Anthony Gardener any interest held by Anthony in Terra Cotta, so that Anthony Gardener and, to the extent she had any community property interest, Jamie Gardener, both ceased to have any ownership interest in Terra Cotta.

C.      In or about 2007 Terra Cotta filed a statement of officers, with the Nevada Secretary of State, showing that Alex Garenderjordan was the only officer.

D.      In or about 2008 Terra Cotta filed a Certificate of Dissolution with the Nevada Secretary of State, so that Terra Cotta was dissolved as a corporation and could thereafter take action only through certain channels (directors and/or

1  shareholders) and only for certain purposes (i.e. – only for the benefit of

2  shareholders).

3          E.     In or about 2008 Alex Gardenerjordan filed for bankruptcy listing the

4  claims against Terra Cotta as being claims against him, individually.  A full

5  discharge was received and the claims by the Falcos were specifically included

6  within the scope of the discharge.

7          F.     In or about 2009 Alex Gardenerjordan was divorced from Rebecca

8  Gardenerjordan and a summary judgment, within that case, determined that the

9  debts related to Terra Cotta were no longer a part of the community property.

10         G.     In or about 2008 an interpleader action was filed by Platte River

11 Insurance to divide the amount available under the Terra Cotta Contractor's Bond

12 between numerous claimants.  A substantial portion of those funds were distributed

13 to the Falcos in partial satisfaction of their claims against Terra Cotta.

14                              **FIRST CLAIM FOR RELIEF**
                                      **(Declaratory Judgment)**
15                                    **(Against All Defendants)**

16        25.    NCIC realleges and incorporates herein by reference, as though set forth in

17 full, paragraphs 1 through 24 of this Complaint.

18        29.    A dispute has arisen and an actual controversy now exits between NCIC and

19 the Defendants as to their respective rights and liabilities.  NCIC contends that the alleged

20 assignment is invalid because the parties have no standing and because the agreement

21 constitutes a breach of the terms and conditions of the NCIC insurance policy.  NCIC

22 further contends that even if the assignment is valid, no rights have been conveyed

23 because neither Terra Cotta, nor the Alleged Terra Cotta Individuals, have any rights to

24 convey against NCIC.  NCIC is informed and believes that the Defendants disagree with

25 such contentions.  Therefore, an actual controversy exists relative to the legal rights,

26 duties and obligations of the respective parties, which controversy NCIC requests the

27 Court to resolve.

28

30.    A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights, duties and obligations with respect to alleged Assignment of Rights.

31.    Accordingly, NCIC requests a declaratory judgment that the Assignment of Rights is invalid or, in the alternative, even if it is valid, no rights have actually been conveyed because NCIC has no obligation to any of the Alleged Terra Cotta Individuals.

**SECOND CLAIM FOR RELIEF**
**(Indemnity)**
**(Against the Alleged Terra Cotta Individuals)**

32.    NCIC realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 24 of this Complaint.

33.    NCIC is informed and believes that the Alleged Terra Cotta Individuals knew, or should have known, that they had no standing to assign any purported rights, against NCIC, to the Falcos.  Moreover, the Alleged Terra Cotta Individuals had been sued by the Falcos for personal liability based on fraud and other torts in which they were alleged to be affirmative wrongdoers, which liability cannot properly be the subject of an assignment of rights as a means to transfer the consequences of their wrongful conduct to NCIC.

34.    As a result of the wrongful conduct and/or active negligence of the Alleged Terra Cotta Individuals, NCIC has been required to expend attorneys fees to bring this litigation and to defend against the allegedly assigned rights.  The exact amount will be subject to proof at the time of trial but is estimated to be in excess of $50,000.

35.    Further, to the extent that NCIC is found liable for any sum whatsoever to the Falcos, which sum is actually due and owing from the Alleged Terra Cotta Individuals, NCIC will have been damaged by such amounts.

**WHEREFORE**, NCIC prays for judgment as follows:

1.    A declaratory judgment that the Assignment of Rights is invalid and of no force and effect as to NCIC.

1          2.     For indemnity from the Alleged Terra Cotta Individuals for all sums paid

2  NCIC as a consequence of their actions including, but not limited to, attorneys fees, in an

3  amount in excess of $50,000.

4          3.     For costs of suit incurred herein.

5          4.     For such other and further relief as the Court may deem just.

DATED: May 18, 2010

BUCHALTER NEMER
A Professional Corporation


By: _____
STEVEN BROWER
Attorneys for Plaintiff
National Contractors Insurance Company,
Inc., a Risk Retention Group